CHICAGO, M. & ST. P. RY. Co. *v.* MINNESOTA CENT. R. Co. and another.

( *Circuit Court, D. Minnesota.* 1882.)

1. RIGHTS OF RAILROAD COMPANIES UNDER CITY ORDINANCE.

   A railroad company having submitted to construct its road through a city under an ordinance reserving the right to alter and amend, must submit to such alterations, etc., as are reasonable and necessary. But such an ordinance shall not be amended or repealed so as to affect essential and vested rights, or be allowed to act retrospectively to take away rights previously granted.

2. CONDITIONS SUBSEQUENT.

   Conditions subsequent are not held in favor by courts of equity, and they will not enforce them unless the contract clearly compels it.

3. CITY ORDINANCE—COVENANT IN—BREACH OF.

   The breach of a covenant contained in a city ordinance will not authorize the common council to divest any estate granted by such ordinance

In Equity.

The Minnesota & Pacific Railroad Company was authorized by the legislature of the territory of Minnesota to construct a railroad from the city of Winona, in this state, up the valley of the Mississippi river, to the city of St. Paul. The present complainant has succeeded to all the rights of said company, and obtained all the power and authority which was granted to the Minnesota & Pacific Railroad Company by its charter for constructing this road. Among the chartered rights of the Minnesota & Pacific Railroad Company was the authority to construct its road and branches "upon, along, across, over, or under any public highway, road, or street, if the same shall be necessary." The immediate successor of the Minnesota & Pacific Railroad Company to the right to construct the Winona branch, so called, was the St. Paul & Pacific Railroad Company, and this branch

was afterwards designated as the St. Paul & Chicago Railway Company, the immediate successor of the present complainant. This branch was constructed by the St. Paul & Chicago Company, and as the city of Red Wing, on the line of the road, was reached, the company was proceeding to build its road through the southern portion of the city, when, at the instigation of the city authorities, an arrangement was made under which the company agreed to change its route to the northern portion of the city, near the river, and the following ordinance was passed by the common council of the city, with the concurrence of the company.

### "ORDINANCE NO. 52.

"An ordinance granting the right of way to the St. Paul & Chicago Railway Company through the city of Red Wing.

"*The City Council of the City of Red Wing do ordain.*

"Section 1. The St. Paul & Chicago Railway Company is hereby authorized and empowered to locate and construct its railroad into and through the city of Red Wing, with such number of tracks, switches, turnouts, and side tracks as may be necessary for the business of said company over, upon, and across such streets as the line of said railroad as now located crosses; and also over, along, and upon the steam-boat landing or public levee in front of blocks 41, 42, and 43, in Red Wing proper, and to operate and use such tracks, with locomotives and cars, *except* and *provided* that only the tracks of said railroad now constructed shall be located or constructed at any place within said city east of Bush street.

"Sec. 2. The said franchise and right of way are granted to and accepted by the said St. Paul & Chicago Railway Company upon the express conditions following; that is to say:

"*First.* That as a condition precedent to the right to construct and maintain said tracks, turnouts, and switches over and upon said streets and public levee, said company shall grade the said levee between the wharves as now constructed in front of said blocks 41 and 42 in such a manner as not to prevent or obstruct access to and the free use of such levee as a steam-boat landing, and for the purposes of the business connected therewith.

"*Second.* The said company shall fill up and keep and maintain the said levee between the main track of said railroad and the northerly line of said blocks 41 and 42 in such a manner so that the said levee shall be as near level with the top of the rails of said track as practicable, and afford suitable drainage towards Potter street.

"*Third.* The said company shall construct and maintain all gutters and water-courses necessary to conduct and carry off the water from said levee in such manner as to prevent all surface water from injuring said levee.

"*Fourth.* The said company shall plank the space between and immediately outside of the rails of said railway in all places on all of its tracks laid across or upon said levee, or in front of said blocks 41, 42, and 43, which planking the said company shall at all times keep in a good and proper state of repair.

"*Fifth.* The said company shall at all places in front of said blocks 41 and 42 lay the rails of said tracks in such manner so that the top of said rails shall be and remain at least eight inches below the level of the door-sill of the storm warehouse now owned by James Lawther and situated upon lot 9 in said block 42.

"*Sixth.* The said company shall so locate and construct its tracks, switches, and improvements as to afford convenient and easy crossings and carriage ways over the same at all street and alley crossings within said city, with an easy grade suitable for the safe and ready passage of vehicles of all kinds; all such crossings to be planked inside and outside of the tracks to the top of the rail, and which crossings shall at all times be by said company kept in a good and proper state of repair; said crossings at Plum and Bush streets to be so planked to the width of not less than 30 feet, and the one at Broad street to the width of not less than 60 feet; and said company shall within 20 days after notice cause Levee street, between Plum and Broad streets, to be made and put in as good condition, and in all respects as accessible for public use, as the same was before said company commenced the construction of its road between the streets last aforesaid; all to be done under the direction of said city council and to its acceptance.

"*Seventh.* If at any time hereafter said city shall cause to be laid out or opened any streets or alleys, crossing any of said tracks, the said company shall, within five days after notice from said city council so to do, make and plank the crossings of such streets and alleys in manner as provided in said sixth condition thereof; and if at any time hereafter said council shall deem it necessary that any crossings should be filled or planked to a width greater than that originally designated, said company shall, within five days after notice so to do, fill and plank such crossings to such increased width as may be designated by said council.

"*Eighth.* The said company shall make in a good and sufficient manner all water-courses, ditches, and drains necessary to carry off all water, so that there shall not at any time, within said city, be any stagnant water caused by reason of any work done or to be done, by said company.

"*Ninth.* If at any time hereafter said city shall cause Levee street to be graded, the said company shall, within 20 days after notice so to do, fill up the intervening space which may be upon the land of company in block 52, in Red Wing proper, and the northerly line of said street, level with the grade of said street, as it is or may be established by said city; and in like manner fill the crossings at Bush and Plum streets.

"*Tenth.* The said company shall keep the streets and said levee as tree as possible from freights, trains, locomotive engines, and cars, and shall not permit any locomotive, car or cars, or train of cars, to stop or remain upon any street crossing for a longer period than five minutes at any one time; and said company shall not obstruct or unnecessarily interfere with the convenient operation of steam-boats or passenger or freight traffic on said public levee; and shall not permit any car or cars to stand or be upon said levee except while the same are being actually loaded at or from some warehouse thereon.

"*Eleventh.* The said company shall not permit any locomotive engine, railroad passenger car, or freight car to be driven, propelled, or run upon or along

the track of said company at a greater rate of speed than four miles per hour at any point within said city between the westerly end of Barn bluff and the westerly side of Jackson street; and at each of said places said company shall erect and maintain a sign-board having thereon the words 'Stop speed; ring the bell;' and while in motion between said points the bell of such locomotive shall be continually sounded to warn persons of approaching danger.

"*Twelfth.* The said company shall, at each and every street crossing within said city, erect and maintain a sign-board having distinctly painted thereon the words 'Railroad crossing.'

"*Thirteenth.* The said company shall not change the grade of its railroad, at any point within said city without the consent of said city council.

"*Fourteenth.* All acts or work or labor done or to be done or performed by said company under the provisions hereof shall be done in such manner as directed by and to the satisfaction and acceptance of said city council.

"*Fifteenth.* The service upon the person in charge of the station-house of said company, situate within said city, of any notice herein provided, shall be in all respects deemed and held a good and sufficient service upon said company. The officer, servants, agents, and employes of said company shall be subject to all police regulations under this ordinance, and under any other law or ordinance of said city.

"*Sixteenth.* The said company expressly assumes the responsibility of all damages to life, limb, or property resulting from any failure or neglect to comply with any of the provisions of this ordinance, or any by-law or resolution passed thereunder, or any other by-law, resolution, or ordinance now or hereafter in force within said city.

"*Seventeenth.* This ordinance may at any time hereafter be changed, amended, or modified by said city, or the proper authorities thereof.

"Passed July 12, 1870."

The present complainant is the owner of several city blocks adjoining the river, and abutting on the south a street designated on the city plat as Levee street, one of the streets specified in the ordinance through which the company was authorized to build its tracks, and since 1870, either by the St. Paul & Chicago Railway Company or the complainant, several tracks have been laid, most of them on the company's land, but crossing all the streets intersecting Levee street at right angles between Hill and Bush streets. There are no tracks running longitudinally on this Levee street, but a spur track has been built from the company's land over a part of the street to reach certain flouring mills and warehouses built on the lots fronting the southerly portion. On November 4, 1882, the complainant commenced to build a track lengthwise of Levee street on that part fronting and abutting its lots near Dakota to Hill street, which track would con-

nect the yard and depot with turn-table and round-house, and on November 14th had expended, as appears by the bill of complaint, about $1,500, and was continuing its construction. On that day the common council passed the following ordinance:

"An ordinance to amend an ordinance of the city of Red Wing, Minnesota, passed July 12, 1871, entitled 'An ordinance granting the right of way to the St. Paul & Chicago Railway Company through the city of Red Wing.'

"*The City Council at the City of Red Wing do ordain:*

"Section 1. That an ordinance of said city, passed July 12, 1871, entitled 'An ordinance granting the right of way to the St. Paul & Chicago Railway Company through the city of Red Wing,' be and the same is hereby amended by adding thereto the following new section, to be numbered and known as section 3; that is to say:

"Sec. 3. It shall not be lawful for the St. Paul & Chicago Railway Company, or its successors or assigns, nor for the Chicago, Milwaukee & St. Paul Railway Company, to enter upon or grade or lay any ties, rails, or railroad track, or any switch or turnout, or any other matter or thing, in or upon, or in any manner to use or occupy any part of, the steam-boat landing or public levee in front of any of the blocks numbered, respectively, 41, 42, and 43 in Red Wing proper, or any part of Levee street within the limits of said city, without first having obtained from the city council of said city a license authorizing such entry, and the laying of such additional railroad track: provided, that nothing in this section contained shall be so construed as to prevent the use of said railway companies, or either of them, of any railroad track fully laid and in use by said companies, or either of them, prior to the fourteenth day of November, 1882, and which track has been so laid and operated by authority of said city council."

—And notified the company to desist from the work contemplated. On the same day or evening previous an ordinance was passed granting the right of way over Levee street to the Minnesota Central Railroad Company.

The complainant owned the fee of Levee street to the center abutting its property, and, without first obtaining authority by condemnation or otherwise for the additional burden to be imposed thereon, the Minnesota Central Railroad Company proceeded to construct its track over and along this Levee street, in front of complainant's lots and blocks. A bill is filed by the Chicago, Milwaukee & St. Paul Railway Company against the city of Red Wing and the Minnesota Central Railroad Company, and an injunction is prayed against the city to prevent interference with the construction of the track surveyed along Levee street, and against the Minnesota Central Railroad Company.

*H. R. Bigelow,* for complainant.

*Gordon E. Cole,* for Minnesota Central Railroad Company.

*W. C. Williston,* for city of Red Wing.

NELSON, D. J. It appeared on the argument, from an affidavit of the president or active manager in construction of the Minnesota Central Railroad, that, without the knowledge and direction of him or any officer having authority, a track was being laid by its employes under the ordinance granted, as set forth in the bill of complaint, but it is also stated that when he was informed of it direction was given to desist, which they did, and that this company has no intention to further proceed, unless, by proper condemnation proceedings, the right so to do is legally obtained. Upon such disclaimer I shall not issue a preliminary injunction at this time against the railroad company, but give leave to the complainant to apply for an injunction at a future time in case an attempt is made to construct its track upon that part of the street over which the complainant has the fee.

In respect to the city: The company having voluntarily submitted to construct its road through the city of Red Wing under the ordinance reserving the right to alter and amend, must submit to such alterations and amendments as are reasonable and necessary. The ordinance did not, however, give authority to amend or repeal so as to affect essential and vested rights. The common council of the city reserved the right to alter and amend this ordinance of 1870 within the scope of the legislative power conferred on the municipality, but no more than reasonable alterations could be passed, such as would be necessary to carry into effect the original purposes of the ordinance and properly preserve the rights of the public. No exclusive right of way over that or any other street was given to the complainant or its predecessor. It could grant authority to another corporation to run its track over the street, and thus confer, so far as it was possible for the city to do, a right to use the street, but in so doing the city could not interfere with the rights acquired by the complainant. Has it done so by the subsequent amendment to the ordinance of 1871, by its action November 14, 1882?

It was stated on the argument, by the counsel for the city, that in this controversy the city really had no interest, and that it was one between the two railroad companies. If such is the understanding of the common council, then it was not the purpose of the city, by the last ordinance, to interfere with any rights of property in and to the street which the complainant had acquired. Certainly this amendment could not act retrospectively and take away rights of property

which had been previously granted.   At the utmost, the ordinance can only compel the complainant to obtain the consent of the city before more tracks could be laid down by it upon Levee street.   It is urged that the ordinance prevented the complainant from completing the work already commenced on November 4, 1882, and it appears such was the view entertained by the city authorities when notice was served on the complainant to stop work.   I cannot assent to such construction of the ordinance.   The right of way given was a private grant on the part of the city, and the complainant, having the authority, proceeded to construct its track and exercise the right granted. It was clearly necessary, as disclosed, not only by the bill, but by the affidavits of the citizens of Red Wing, read on the part of the defendants.   The number of cars required to furnish transportation, and the large mills and warehouses on Levee street furnishing freight, and the great growth of the city and the surrounding country, required not only greater facilities than the complainant supplied, but had induced the construction of the Minnesota Central Railroad, making the city of Red Wing a terminus.   The ordinance of 1871 contemplated such increase of traffic, and authorized the building of all necessary tracks to meet the requirements of trade and the wants of the public, but no exclusive right of way was given.   The company, in good faith, for aught that appears, was exercising legally the right given by the city ordinance, and had expended quite an amount of money in construction when stopped.   I think the arrangement entered into between the city and the complainant's predecessor, by which its route was changed and the ordinance of 1871 was passed, was more than a mere license which could be revoked at a future time.   It has all the elements of a contract, in view of the fact that the charter gave legislative authority to use the public streets in constructing the road from Winona to St. Paul.

It was urged upon the hearing that the complainant had violated a condition (No. 10) upon which the right of way was granted, and the common council could repeal, and thus divest the property rights acquired thereunder.   At the most, this provision (No. 10) is a condition subsequent, and courts of equity do not look with favor upon such conditions, and certainly will not enforce them, unless the contract clearly compels it.   I am inclined, however, to think the provision No. 10 in this ordinance is in its nature a mere covenant, and a breach would not authorize the common council to divest the estate.

In view of what has been stated, I think the complainant can complete the track it was building when work stopped, notwithstanding the ordinance of November 14, 1882; but as the counsel for the city states the controversy is one between the defendant railroad and the complainant, and the city really has no interest at stake, I shall not issue an injunction unless there is future interference with the contemplated work.

In the view taken it is not necessary to consider the effect of a suit commenced in the state court by the city of Red Wing against the Chicago, Milwaukee & St. Paul Railway Company, and removed to this court, where it is now pending.

Motion for injunction denied, with leave to renew.